IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No.:  4:25CR00022-001 |
| | : | |
| ISAIAH LUKE HOOD, | : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Pursuant to Section 6A1.2 of the *Federal Sentencing Guidelines* the defendant, Isaiah Luke Hood, comes now and submits the following:

**I.     Objections to Presentence Report**

The defendant does not object to any of the matters contained in the pre-sentence investigative report.

**II.     Sentencing Factors**

A sentencing court is required to consider the guidelines ranges, but is permitted to tailor the sentence in light of other statutory concernsas well. S*ee* 18 U.S.C.A 3553(a)(4)(Supp. 2004). Specifically, 18 USC 3553(a) provides:

> The court shall impose a sentence **sufficient, but not greater than necessary,** to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> (1)     the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)     the need for the sentence imposed—
>     (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B)     to afford adequate deterrence to criminal conduct;
>     (C)     to protect the public from further crimes of the defendant; and
>     (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3)     the kinds of sentences available;
> (4)     the kinds of sentence and the sentencing range established for—

    (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or

    (B)    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;

(5)    any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

The Supreme Court has described the process for imposing a sentence under the advisory sentencing guidelines as follows:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable [United States Sentencing] Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance…[A] major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Gall v. United States,* 128 S.Ct. 586, 596-97 (2007)(citations and footnote omitted; *see also Kimbrough v. United States*, 128 S.Ct. 558, 569-70 (2007).

### A. Advisory Sentencing Guidelines

This Honorable Court must consider the advisory sentencing guidelines. Further, the district court must provide some individualized assessment "justifying the sentence imposed and rejection of arguments for a higher or lower sentence based on § 3553." *United States v. Lynn*, 592 F.3d 572, 584 (4th Cir. 2010). Under the law of this circuit a district court must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why he has rejected those arguments. *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017); *Slappy*, 872 F.3d 202, 207 (4th Cir. 2017) (internal citation and quotation marks omitted).

An individualized assessment requires "that district courts consider the defendant's non-frivolous arguments for a downward departure, impose an individualized sentence based on the characteristics of the defendant and the facts of the case, and explain the sentence chosen." *Id.* A "'sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority'" by articulating how the sentencing factors apply to the case before it. *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (quoting *Rita*, 551 U.S. at 356).

The defendant's advisory guideline range is 292 months to 360 months. For the reasons detailed below, the defendant submits a sentence of fifteen (15) years, which is the mandatory minimum sentence, is sufficient to satisfy the legitimate sentencing goals of § 3553(a).

B. **§ 3553(a) Sentencing Factors**

In addition to considering the advisory sentencing range recommended under the federal sentencing guidelines and the statutory restrictions, this Honorable Court must also consider the sentencing factors set forth in § 3553(a). The defendant submits an application of these factors to the case at bar leads to the conclusion that a sentence within the advisory guideline range would be far greater than necessary. Further in light of the history and characteristics of the defendant, the nature of the offense, the need to avoid unwarranted disparities, and the need to deter defendants, a sentence of fifteen (15) years would be appropriate.

1. **History and Characteristics of The Defendant**

The defendant is young. He is twenty-one (21) years old. At the time of the offense, and its relevant conduct, he was an even younger immature and naïve eighteen (18) and nineteen (19) years old.

Isaiah lived a very sheltered and regimented adolescent life that likely left him very ill-equipped to deal with freedoms, responsibilities and opportunities that would soon avail themselves to him as a young man becoming private in the United States Army.

Isaiah was born and raised in Dixon, Illinois, a small farming town. Isaiah and his now sixteen (16) year old sister, Alissa Hood were raised in a Christian household by their father, Matthew Hood and April Hood, their mother. Both Isaiah and Alissa were home-schooled in a Christian-based education program by their mother, who doubled as Sunday school teacher who had her family attend church most days of the week. Isaiah was apart of the junior church and his sister was part of the youth ministry.

Isaiah graduated high school in June 2022 at the age of seventeen (17), enlisted in the United States Army nine (9) days before his eighteenth (18th) birthday August 18, 2022. He was stationed

4

at Fort Eustis in Virginia. This was Hood's first time away from home, his first away from the supervision and regimented life he had growing up, and his time dealing with people from places other than his small town. He began using alcohol at social occasions slightly before age nineteen (19) to the extent that on June 22, 2023, his medical records made a notation of alcohol abuse. Shortly thereafter and for reasons not clear, Isaiah attempted suicide in September 24, 2023, by cutting his wrist.

Despite Isisah's current legal troubles, the Hood family remains was very close. Isiash's parents have been supportive and instrumental throughout his upbringing and continue to remain supportive regarding this matter.

Upon his release his plan is to reside with his family.

### 2. Nature of the Offense

The facts supporting the defendant's guilty pleas are well known to the court and are detailed further in the pre-sentence investigative report. As a consequence, counsel will not recite what is already known and available in the record.

The Defendant has accepted responsibility for his actions related to this offense. He timely pled guilty.

Hood's immaturity and age at the time of the offense, is a basis for which counsel argues is mitigative and is sufficient to sentence him to the fifteen (15) year mandatory minimum sentence.

In <u>Roper v. Simmons</u>, 543 US 551 (2005), the Supreme Court noted:

> From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed. Indeed, "[t]he relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside." Johnson, supra, at 368; see also Steinberg & Scott 1014 ("For most teens, [risky or antisocial] behaviors are fleeting; they cease with maturity as individual identity becomes settled. Only a relatively small proportion of adolescents who experiment in risky or illegal activities develop entrenched patterns of problem behavior that persist into adulthood")

<u>Id.</u> 570

The Court further noted that [t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18. Id. 574.

Isaiah was age eighteen (18) and nineteen (19) for the current offense and its relevant conduct. He never met any of the juveniles in person.

### 3. Need to Deter

A sentence of fifteen (15) years would serve as a significant deterrent to both the defendant and others that would commit similar offenses. It would represent a significant period of incarceration. It would also serve as a beacon to others that such conduct will not be tolerated.

A sentence at the mandatory minimum of fifteen (15) years is sufficient to meet the aims of general deterrence.

Research indicates that increases in the *severity* of punishment are far less important to producing deterrent effects than the *certainty* of punishment (if severity is relevant at all). *See* Wright, *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, 1. In May of 2016, even the Department of Justice confessed in its publication on deterrence that "[i]ncreasing the severity of punishment does little to deter crime," acknowledging that "[l]aws and policies designed to deter crime by focusing mainly on increasing the severity of punishment are ineffective." U.S. Dept. of Justice, *National Institute of Justice Five Things About Deterrence* (May 2016), *available at* https://www.ncjrs.gov/pdffiles1/nij/247350.pdf (last accessed July 24, 2017).

Indeed, virtually no empirical data suggests that lengthy sentences achieve better general deterrence than moderate ones. After reviewing the available evidence on whether harsher sentences deter, Professor Doob asked and answered the following question:

6

> Can we conclude that variation in the severity of sentences would have differential (general) deterrent effects? Our reply is a resounding no. We could find no conclusive evidence that supports the hypothesis that harsher sentences reduce crime through the mechanism of general deterrence. Particularly given the significant body of literature from which this conclusion is based, the consistency of the findings over time and space, and the multiple measures and methods employed in the research conducted, we would suggest that a stronger conclusion is warranted. More specifically, the null hypothesis that variation in sentence severity does not cause variation in crime rates should be conditionally accepted.

Anthony N. Doob & Cheryl Marie Webster, *Sentence Severity and Crime: Accepting the Null Hypothesis*, 30 Crime & Just. 143, 187 (2003).  Indeed, "[t]he findings regarding general deterrence are relatively settled":

> The existing data show that in the absence of the threat of punishment for criminal conduct, the social fabric of society would readily dissipate; crime would escalate and overwhelmingly frustrate the capacity of people to lead happy and fulfilled lives. Thus, general deterrence works in the absolute sense: there is *a connection* between criminal sanctions and criminal conduct. However, there is insufficient evidence to support a direct correlation between higher penalties and a reduction in the crime rate.… It is counter-intuitive to suggest that higher penalties will not reduce the crime rate. However, the evidence is relatively definitive.

Mirko Bagaric, *A Rational Theory of Mitigation and Aggravation in Sentencing: Why Less Is More When It Comes to Punishing Criminals*, 62 Buff. L. Rev. 1159, 1202-03 (2014) (footnotes omitted).  In sum, "studies repeatedly show that awareness of potentially severe sanctions does not produce less crime." *Id.*, at 1203.  So general deterrence "does not require a particularly burdensome penalty, merely one that people would seek to avoid," which "could be satisfied by a fine or a short prison term." *Id.* at 1205.

The relevant deterrence message is that if you commit a crime, you will be caught and prosecuted.  That message does not depend on Mr. Hood receiving any period of additional incarceration above the mandatory minimum period of fifteen (15) years punishment.

## Conclusion

Wherefore the defendant, Isaiah Luke Hood, respectfully requests that this Honorable Court sentence him to a period of fifteen (15) years of incarceration.  Defendant would request the

7

Court to recommend to the BOP that he be housed at a facility as close to his family as possible.

I ASK FOR THIS:

_____/s/_____
Daymen Robinson, Esq.
Virginia State Bar No.: 66708
Janaf Office Building
5900 E. Virginia Beach Blvd, Suite 601
Norfolk, Virginia 23502
(757) 200 0578 Telephone
(757) 455-9074 Fax
Daymenrobinson@gmail.com Counsel for Defendant Isaiah Luke Hood

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and accurate copy of the foregoing to be served upon all counsel of record via ECF on September 24, 2025

Devon Heath, Esquire

101 West Main Street, Suite 8000

Norfolk, VA 23510

757-441-6331

Jo@usdoj.gov

_____/s/_____
Daymen Robinson, Esq.
Virginia State Bar No.:66708
Janaf Office Building
5900 E. Virginia Beach Blvd, Suite 601
Norfolk, Virginia 23502
(757) 200 0578 Telephone
(757) 455-9074 Fax
Daymenrobinson@gmail.com Counsel for Defendant Isaiah Luke Hood

8